**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KENNETH CRANDALL,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 25-cv-2013-MJS |

**MEMORANDUM OPINION**

As a veteran himself, Kenneth Crandall wants to become an accredited claims agent with the U.S. Department of Veterans Affairs ("VA") so he can assist other veterans seeking benefits. After the VA denied his application, Crandall asked it to reconsider. And for good measure, he separately submitted two new applications. But to Crandall's frustration, the VA never acted on those later submissions. So, he sued. Through his now-consolidated cases, Crandall asserts a claim for intentional infliction of emotional distress ("IIED") under the Federal Tort Claim Act ("FTCA") and several claims under the Privacy Act. The Government moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 12.) For the reasons that follow, the Court **GRANTS** the Government's motion and **DISMISSES** Crandall's claims.

**BACKGROUND**

The following facts are derived from Crandall's complaints and accepted as true. *Casey v. McDonald's Corp.*, 880 F.3d 564, 567 (D.C. Cir. 2018). Further, because Crandall is proceeding *pro se*, the Court construes his claims "in light of all filings, including filings responsive to [the] motion to dismiss." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (citations omitted).

As background, Crandall is a U.S. Navy veteran. (ECF No. 1 ("Compl.") ¶ 11.)[1] In the early 2010s, he worked for a couple of years as a VA employee, "assisting with developing compensation claims for veterans." (*Id.*) While employed with the VA, Crandall apparently raised "hundreds of whistleblower actions." (*Id.* ¶ 12.) The VA terminated his employment in early 2012, but Crandall successfully challenged that decision with the Merit Systems Protection Board ("MSPB") and was reinstated about a year later, until the VA terminated his employment a second time in mid-2013. (*Id.* ¶¶ 12–18.) Crandall likewise appealed that decision to the MSPB, after which Crandall and the VA reached a settlement in 2014. (*Id.* ¶¶ 19–20.)

Fast forward to this dispute. In 2018, Crandall applied to become an accredited claims agent with the VA. (Compl. ¶ 21.) Broadly speaking, claims agents help veterans with benefits-related claims before the VA. Congress authorized the VA Secretary to recognize individuals as claims agents provided that any applicants can satisfy certain statutory criteria and other requirements the Secretary may set by regulation. *See* 38 U.S.C. § 5904(a); 38 C.F.R. § 14.629.

In May 2020, the VA denied Crandall's application. (Compl. ¶ 22.) As Crandall describes the denial letter, it referenced "alleged emails from … Crandall to Diana Rubens … a former VA Undersecretary[.]" (2d Compl. ¶ 12.) Crandall's complaints here do not further describe the emails or the denial letter, but another federal court summarized both in a prior proceeding:

> The denial letter cites numerous emails [Crandall] sent to officials and employees at the VA … [and] quotes these emails, noting [Crandall] referred to Rubens as "Dirty D" and a "witch," and stated he would be "watching" her for a "very long time." The letter further notes [Crandall] referred to another VA official as a pedophile, accused various officials of "horrendous acts as to illegal employee firings," and stated that he was "looking forward to a new White Administration."

---

[1] Many of Crandall's factual allegations are functionally identical across both of his complaints. (*Compare* Compl. ¶¶ 11–27, *with* ECF No. 11 ("2d Compl.") ¶¶ 1–18.) For simplicity's sake, where the allegations appear in both complaints, the Court generally cites only to the paragraphs of Crandall's originating complaint in the lead case (No. 25-cv-2013). The Court separately cites to the complaint from Crandall's second-filed case (No. 25-cv-2669) as to allegations specific to his Privacy Act claims.

> [The] denial letter concludes that these emails raise serious concerns about [his] character and ability to provide valuable assistance to veteran claimants."

*Crandall v. McDonough*, 2024 WL 4190867, at *1 (E.D. Pa. Sept. 13, 2024), *aff'd as modified,* 2025 WL 1703841 (3d Cir. June 18, 2025) (per curiam).[2]

After receiving the VA's denial letter in May 2020, Crandall requested reconsideration of the VA's decision that same month. (Compl. ¶ 23.) But the VA never responded or issued any determination on Crandall's reconsideration request. (*Id.*) He later submitted two new applications on a separate track, one in September 2021 and another in February 2023. Again, the VA never separately acted on those later applications either, even after Crandall's follow-up. (*Id.* ¶¶ 24–27.)

In August 2025, Crandall alleges that the VA submitted "unrelated emails" in an MSPB docket in connection with his appeal of a whistleblower claim. (2d Compl. ¶ 19.) Crandall seems to be referring to the same emails described above—the ones he sent to Ms. Rubens and others, and which the VA cited in denying Crandall's claims-agent application. (*See id.*)

Proceeding *pro se*, Crandall filed his first suit in this District in June 2025. (*See* Compl.) Through that complaint, Crandall asserts a single IIED claim alleging that the VA's continued failure to act on his claims-agent applications—both his request for reconsideration of the original denial and his two additional applications that followed—amounts to extreme and outrageous conduct that has caused him severe distress. (*Id.* ¶¶ 36–42.) Crandall then filed a second lawsuit in this District in August 2025, asserting various Privacy Act violations stemming from the VA's

---

[2] Crandall attached the denial letter itself as an exhibit in that case. (Case No. 24-cv-626-JMY, ECF No. 1-1.) Along with the details summarized in the E.D. Pa. ruling, the letter describes other emails Crandall reportedly sent to Ms. Rubens, including one in late 2017 comparing her to a "North Korean Dictator" and another from mid-2018, near the time of Ms. Rubens' apparent retirement, in which Crandall wrote, "THE WICKED WITCH IS DEAD – PRAISE THE LORD!!" (*See id.*) Adding to the context above, the letter explained its concerns with Crandall's behavior as follows: "[I]t is unclear why you continued to mock VA employees for years after your termination. It reflects an unprofessional, vengeful mentality. If you represent veterans in their VA benefits claims, I cannot help but wonder whether you will employ similar tactics during interactions with VA officials, which would certainly detriment veterans." (*See id.*)

alleged use of the emails mentioned above. (*See* 2d Compl.) Because both complaints spring from the same overall facts, the Court subsequently consolidated the cases at Crandall's request. (*See* ECF No. 10; Min. Order, Dec. 11, 2025.) Now, the Government moves to dismiss Crandall's claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF No. 12 ("Mot.").) The motion is fully briefed and ripe for decision. (ECF No. 19 ("Opp'n"); ECF No. 20 ("Reply").)[3]

## LEGAL STANDARDS

Under Rule 12(b)(1), dismissal is warranted when a court "lack[s] … subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "In most cases, a plaintiff's failure to state a claim under Rule 12(b)(6) does not deprive a federal court of subject-matter jurisdiction." *Brownback v. King*, 592 U.S. 209, 217 (2021). But relevant here, "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Id.* at 217. This means that if a plaintiff's "tort claims fail[] to survive a Rule 12(b)(6) motion to dismiss, the United States necessarily retain[s] sovereign immunity," thus "depriving the court of subject-matter jurisdiction" over those claims. *Id.* at 218; *Cunningham v. EEOC*, 2025 WL 1840115, at *1 (D.C. Cir. July 2, 2025) (per curiam).

Under Rule 12(b)(6), dismissal is warranted when a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" means that the facts pleaded must allow for a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), a court must afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam) (quoting *Schuler v. United States*, 617

---

[3] The Court allowed Crandall to file an amended response to the Government's motion. (ECF No. 17; Min. Order, Mar. 6, 2026.) For the sake of thoroughness, though, the Court reviewed both of Crandall's briefs.

F.2d 605, 608 (D.C. Cir. 1979)). But a court need not accept as true "legal conclusions couched as factual allegations[,]" *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (per curiam) (citation omitted), nor will mere "recitals of the [legal] elements of a cause of action … suffice" to forestall a motion to dismiss, *L. Xia v. Tillerson*, 865 F.3d 643, 650 (D.C. Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

Finally, in cases involving *pro se* litigants, courts should apply a "liberal reading to [the] complaint." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014). This requires reading "the entire pleading to determine if any legally cognizable claim can be found," alongside any "supplemental material" submitted, including the plaintiff's opposition brief. *Spence v. United States Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024) (first quoting 5 Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice and Procedure* § 1286 (4th ed. 2021); then quoting *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007)).

## ANALYSIS

### I. Crandall's FTCA Claim

"The United States and its agencies are generally immune from suit in federal court absent a clear and unequivocal waiver of sovereign immunity." *Crowley Gov't Servs. v. GSA*, 38 F.4th 1099, 1106 (D.C. Cir. 2022). "The FTCA provides a limited waiver of the federal government's sovereign immunity from damages liability for torts committed by federal employees acting within the scope of their employment." *Loumiet v. United States*, 828 F.3d 935, 941 (D.C. Cir. 2016) (citing 28 U.S.C. §§ 1346(b), 2674). Specifically, an actionable claim under the FTCA is one:

> [1] against the United States, [2] for money damages, … [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Brownback*, 592 U.S. at 212 (alterations in original) (quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994)); 28 U.S.C. §1346(b). Even when a claim satisfies those six general elements, though, the FTCA "expressly retains immunity from some tort liability through a number of statutory exceptions." *Loumiet*, 828 F.3d at 941 (citing 28 U.S.C. § 2680). "If one of those exceptions applies, the court lacks subject-matter jurisdiction to hear the plaintiff's claims." *Id.* (citing *Simmons v. Himmelreich*, 578 U.S. 621, 625 (2016)).

Here, the Government seeks dismissal of Crandall's IIED claim on several grounds. First, it argues that the "discretionary function" and "intentional tort" exceptions to the FTCA operate to preserve sovereign immunity over Crandall's claim. (Mot. at 7–11 (citing 28 U.S.C. § 2680(a), 2680(h).) Second, it argues that Crandall fails to state a viable IIED claim in any case because the underlying allegations are not extreme or outrageous. (*Id.* at 11–12.) Agreeing with the Government's last argument, the Court finds it unnecessary to reach the others. Even assuming no statutory exception preserves immunity over Crandall's claim, it still fails because Crandall does not allege the sort of extreme and outrageous conduct necessary for a claim of IIED.

Because both parties assume that District of Columbia tort law governs Crandall's claim, the Court assumes the same. To plead a viable IIED claim under D.C. law, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant that (2) intentionally or recklessly (3) caused the plaintiff severe emotional distress." *Blackwell v. Planet Fitness Franchising, LLC*, 356 A.3d 1251, 1259 (D.C. 2026) (quoting *Robertson v. District of Columbia*, 269 A.3d 1022, 1033 (D.C. 2022)). "Extreme and outrageous conduct" means behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Kerrigan v. Britches of Georgetown, Inc.*, 705 A.2d 624, 628 (D.C. 1997)); *see also May v. River E. at*

*Grandview*, 322 A.3d 557, 574 (D.C. 2024) (same). The D.C. Court of Appeals recently reiterated that this is a "demanding" test—a "high bar." *Blackwell*, 356 A.3d at 1259–60.

Here, Crandall's IIED claim is premised on the VA's alleged years-long failure to satisfactorily address his applications to become an accredited claims agent, including his request for reconsideration of the VA's original denial and his two additional applications that followed. (Compl. ¶ 32 (asserting that the VA engaged in "extreme and outrageous conduct by ignoring the relevant statute and regulations" governing the claims-agent application process); *see also id.* ¶¶ 37–42 (similar); *see also* Opp'n at 17–18 (describing the VA's alleged failure to respond to his reconsideration request or adjudicate his subsequent applications as "extreme and outrageous").) These allegations fall short of extreme and outrageous conduct. Although Crandall may be frustrated by these circumstances, a federal agency's asserted inaction in rendering a determination on a discretionary application to represent claimants before the agency does not qualify as conduct that is "beyond all possible bounds of decency," "atrocious," or "utterly intolerable in a civilized community." *Blackwell*, 356 A.3d at 1259. Tellingly, Crandall does not point to even a single case—whether from the District of Columbia or elsewhere—that allowed an IIED claim on these or similar facts. Heeding the D.C. Court of Appeals' admonition that the necessary showing is "demanding" and imposes a "high bar," Crandall's allegations simply do not rise to the level of extreme and outrageous conduct to support a viable IIED claim under D.C. law.[4]

[4] In fact, the D.C. Court of Appeals recently questioned whether the sort of *inaction* Crandall alleges can ever suffice to support a viable IIED claim. *See May*, 322 A.3d at 574 ("We read appellants' more general assertion to argue that the District acted in an outrageous or extreme manner by *failing* to take action, and we are unable to identify controlling precedent that finds the absence of action to be sufficiently outrageous as to substantiate an IIED claim."). The Court need not go that far here. Even assuming inaction can qualify as extreme and outrageous in some circumstances, Crandall's allegations certainly do not fit that bill.

Without plausible allegations of extreme and outrageous conduct, Crandall cannot make out an IIED claim, and without a plausible IIED claim, he cannot establish a waiver of sovereign immunity under the FTCA. Accordingly, the Court dismisses IIED claim under the FTCA.[5]

## II. Crandall's Privacy Act Claims

The Court turns next to Crandall's Privacy Act claims. Congress enacted the Privacy Act of 1974 "to protect the privacy of individuals identified in federal information systems." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024) (citation modified). To that end, the Act "regulate[s] the collection, maintenance, use, and dissemination of information by [federal] agencies," outlines "detailed instructions for managing their records," and "provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." *Doe v. Chao*, 540 U.S. 614, 618 (2004).

Broadly speaking, the Privacy Act authorizes four different types of claims. *See* 5 U.S.C. § 552a(g)(1)(A)–(D); *Jackson v. Kennedy*, 2026 WL 172440, at *1 (D.D.C. Jan. 22, 2026) (describing the various causes of action). The first two categories apply when an agency either fails to amend a record as requested, 5 U.S.C. § 552a(g)(1)(A), or refuses to permit access to a record, *id.* § 552a(g)(1)(B). The third category applies when an agency "fails to maintain any record … with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness … and consequently a determination is made which is adverse to [an] individual." *Id.* § 552a(g)(1)(C). And the fourth category serves as a catch-all, authorizing suit when an agency's

[5] Crandall separately asserts a standalone claim titled "Respondeat Superior." (Compl. ¶¶ 43–47.) "Respondeat superior is a doctrine that allows an employer to be held vicariously liable for the acts of his employees committed within the scope of their employment." *Daniels v. WMATA*, 2026 WL 1803661, at *2 (D.D.C. June 23, 2026) (citation omitted). In other words, it "is not an independent tort claim, but rather a legal theory of vicarious liability that transfers liability from an agent to its principals." *Lewis v. District of Columbia*, 768 F. Supp. 3d 76, 114–15 (D.D.C. 2025); *see also Daniels*, 2026 WL 1803661, at *2 ("It is clearly [] established law that respondeat superior is not a separate cause of action" (citation omitted)). With no viable IIED claim, there is nothing for Crandall to pursue under a theory of respondent superior.

failure to adhere to any of the Privacy Act's statutory obligations "ha[s] an adverse effect" on an individual. *Id.* § 552a(g)(1)(D).

Crandall's claims here implicate the final catch-all category. He seeks monetary damages based on the VA allegedly: (1) not publishing a system of records notice ("SORN") covering the VA's use of Microsoft Outlook (*see* 2d Compl. ¶¶ 20–23 (Count I)); (2) improperly disseminating his emails in connection with the VA's adjudication of his claims-agent application(s) and an MSPB appeal proceeding (*id.* ¶¶ 24–31 (Counts II and III)); and (3) maintaining records that he says describe his exercise of First Amendment rights (*id.* ¶ 32–35 (Count IV)).

To state a viable claim under Section 552a(g)(1)(D), Crandall must allege facts plausibly establishing that: "(1) the agency violated a provision of the Act; (2) the violation was intentional or willful; and (3) the violation had an 'adverse effect' on the plaintiff in the form of actual damages." *Chichakli v. Tillerson*, 882 F.3d 229, 233 (D.C. Cir. 2018) (citations omitted). Further, under the Privacy Act, a claim must generally be brought "within two years from the date on which the cause of action arises," except in limited circumstances not applicable here. 5 U.S.C. § 552a(g)(5); *Kursar v. Transp. Sec. Admin.*, 442 F. App'x 565, 567 (D.C. Cir. 2011) (per curiam).

**A. Most of Crandall's Privacy Act Claims Are Barred By Res Judicata**

As previewed already, this is not Crandall's first case against the VA related to these issues. He already sued the VA for Privacy Act violations—among other claims—stemming from the VA's alleged misuse of the same emails underlying his claims here. Given that background, the Court concludes that many of Crandall's claims are barred by res judicata.

Under the doctrine of res judicata, "successive litigation of an issue of fact or law actually litigated and resolved in a [prior] valid court determination" is precluded when it involves a party to the first case. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation omitted). One aspect of res

judicata is the principle of claim preclusion, which bars a subsequent lawsuit "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Nat. Res. Def. Council v. EPA*, 513 F.3d 257, 260 (D.C. Cir. 2008) (quoting *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006)). Importantly, claim preclusion "prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 590 U.S. 405, 412 (2020). And because "res judicata belongs to courts as well as to litigants," the Court may properly raise the issue on its own. *See Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997); *Rosendahl v. Nixon*, 360 F. App'x 167, 168 (D.C. Cir. 2010) (per curiam) (similar).

In Crandall's prior case against the VA, the U.S. District Court for the Eastern District of Pennsylvania dismissed with prejudice Crandall's claims under the Privacy Act due to his failure to establish "any actual harm, adverse effects, or pecuniary damages because of any purported violation" concerning the VA's use of the emails at issue, which the Third Circuit affirmed. *Crandall*, 2024 WL 4190867, at *5 (E.D. Pa. Sept. 13, 2024), *aff'd*, 2025 WL 1703841 (3d Cir. June 18, 2025). Those prior claims closely mirror Crandall's claims here, at least insofar as they relate to the VA's non-approval of his application to become a claims agent. Crandall previously asserted that the VA's allegedly improper use and dissemination of his emails to Ms. Rubens (and others) caused the VA to reject his accreditation as a claims agent; he took issue with the VA maintaining records that purportedly reflected his First Amendment activity; and he faulted the VA's compliance with SORN requirements for a database (the "VIEWS system") where he alleged those emails were maintained. *See Crandall*, 2024 WL 4190867, at *5–6. Except for Crandall's

current allegations surrounding the VA's alleged August 2025 disclosure of his emails in an MSPB appeal, his current claims all assert the same sorts of statutory violations based on the same events: the VA's alleged mishandling of his emails and his non-approval as an accredited claims agent. *See, e.g.*, *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (citation omitted) (explaining that two suits implicate the same cause of action when "they share the same nucleus of facts"). Although Crandall's prior claims were focused on the VA's *original* denial of his application, whereas his current claims focus more on the VA's inaction on his *reconsideration request* and his *follow-on applications*, those events had all transpired by the time Crandall filed suit in his original case back in September 2023. Crandall asked for reconsideration in May 2020 and filed his additional applications in September 2021 and February 2023. (*See* 2d Compl. ¶¶ 14–16.) Thus, Crandall certainly could have raised the latest iteration of his Privacy Act claims during the prior E.D. Pa. litigation but did not. Claim preclusion bars him from doing so now. *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 491 (D.C. Cir. 2009) ("[R]es judicata ... bars relitigation not only of matters determined in a previous litigation but also ones a party could have raised[.]" (quoting *NRDC v. Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988))). These claims are therefore dismissed with prejudice on res judicata grounds.[6]

---

[6] The Government separately argues that these claims would be barred by the Privacy Act's two-year statute of limitations. The Court agrees. Crandall knew that the VA relied on his emails to Ms. Rubens (and other agency officials) in denying his first accreditation application. And under Crandall's theory, the same alleged Privacy Act violations that influenced that original denial decision similarly caused the VA to take no action on his May 2020 reconsideration request and his subsequent applications from September 2021 and February 2023. But Crandall failed to file his claims until June 2025—more than two years later. (And perhaps not coincidentally, just a couple months after the Third Circuit affirmed the dismissal of his E.D. Pa. case.) "The law in this Circuit has long been clear that, 'in a normal Privacy Act claim, the cause of action does not arise and the statute of limitation does not begin to run until the plaintiff knows *or should know* of the alleged violation.'" *Agelli v. Burwell*, 164 F. Supp. 3d 69, 75 (D.D.C. 2016) (alteration in original) (quoting *Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 1987)). Because Crandall was at least on inquiry notice of the VA's alleged violations by no later than February 2023, his failure to file suit until June 2025 means that his Privacy Act claims related to his claims-agent application(s) are time barred.

### B. Crandall's Newest Privacy Act Claim Is Not Plausible

That leaves Crandall's claims to the extent they grow out of the VA's recent alleged disclosure of his emails in connection with an MSPB appeal in August 2025. On that score, the Court agrees with the Government that Crandall fails to identify any resulting "actual damages" related to that activity. (Mot. at 15–16; Reply at 5–6.) Indeed, Crandall fails to allege *any* specific negative consequences that flowed from the challenged disclosure, let alone in the form of "actual damages" or pecuniary loss. Insofar as Crandall is relying on allegations of "mental distress, emotional trauma, embarrassment, [and] humiliation" (2d Compl. ¶¶ 23, 27, 31, 35), these sorts of harms cannot suffice. *See, e.g.*, *FAA v. Cooper*, 566 U.S. 284, 298 (2012) ("[W]e think it likely that Congress intended 'actual damages' in the Privacy Act to mean special damages for proven pecuniary loss."); *Stewart v. Kendall*, 578 F. Supp. 3d 18, 23 (D.D.C. 2022) ("[D]amages for mental or emotional distress are not sufficient to maintain a Privacy Act claim." (alteration in original)). More, and separately, Crandall fails to plausibly allege how the VA's introduction of his own emails in his own "appeal for whistleblower retaliation" (2d Compl. ¶ 19) would be an "intentional or willful" violation of the Act—*i.e.*, activity "so patently egregious and unlawful that anyone understanding the conduct should have known it unlawful." *Rtskhiladze v. Mueller*, 110 F.4th 273, 278–79 (D.C. Cir. 2024). An agency's use of email communications that an individual affirmatively and voluntarily sent to agency officials to defend itself from legal claims the individual is pursuing against the agency, whether before the MSPB or otherwise, does not strike the Court as any obvious violation of the statute, and Crandall does not offer any clear explanation—whether in his complaint or his opposition—to indicate otherwise.

Because Crandall does not establish any actual damages caused by the alleged violations associated with the MSPB appeal, and because he fails to show an intentional or willful violation in any event, his remaining Privacy Act claims fail as a matter of law under Rule 12(b)(6).

**III. Leave To Amend**

One final point remains. Toward the end of his opposition, Crandall asks for a chance to amend his complaint(s) to provide any missing "factual information" that might be necessary. (*See* Opp'n at 26.) But as to many of Crandall's claims, the Court's dismissal on res judicata grounds necessarily operates as a dismissal with prejudice. *See, e.g.*, *Lamont v. Proskauer Rose, LLP*, 881 F. Supp. 2d 105, 113 (D.D.C. 2012); *Arnold v. Sec'y of the Navy*, 2020 WL 1930393, at *6 (D.D.C. Apr. 21, 2020). As to Crandall's IIED claim and his Privacy Act claims stemming from the alleged MSPB appeal disclosure, his request is procedurally infirm. Under D.C. Circuit precedent, a party wishing to amend must file "a motion for leave to amend [a] complaint and attach[] a proposed amended complaint." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012) (citing *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006)). And "[a] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Id.* (quoting *Belizan*, 434 F.3d at 582); *see also U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) (same). These requirements are equally applicable to *pro se* litigants. *See, e.g.*, *Lamb v. Millennium Challenge Corp.*, 573 F. Supp. 3d 346, 354 (D.D.C. 2021) ("[I]t is well settled that a plaintiff, even when proceeding *pro se*, may not amend his complaint through an opposition brief."). At this point, Crandall has not moved for leave to amend or submitted a proposed amended complaint. Accordingly, to the extent Crandall legitimately believes that he can plead additional facts to address the deficiencies prompting dismissal of his IIED claim and his

Privacy Act claims related to the MSPB appeal—and only those claims—he may file a motion seeking leave to amend under Fed. R. Civ. P. 15, with a copy of any proposed amended complaint attached pursuant to Local Civil Rule 15.1.

## CONCLUSION

The Court **GRANTS** the Government's motion to dismiss (ECF No. 12) and **DISMISSES** Crandall's claims in full. The Court will issue a separate order so stating.

Dated: September 24, 2026

MATTHEW J. SHARBAUGH
United States Magistrate Judge